**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                  **Plaintiff,**<br><br>            **v.**<br><br>**JOSEPH ANDREW PAUL,<br>JOHN D. ELLIS, JR.,<br>JAMES S. QUAY,<br>  a/k/a "STEPHEN JAMESON," and<br>DONALD H. ELLISON,**<br><br>                  **Defendants.** | Civil Action No. 16-1326 (CMR) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND
EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT AGAINST
<u>DEFENDANTS JOSEPH ANDREW PAUL AND JAMES QUAY</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ i

PRELIMINARY STATEMENT ...............................................................................................1

PROCEDURAL HISTORY.........................................................................................................2

STATEMENT OF FACTS ..........................................................................................................4

ARGUMENT...............................................................................................................................6

    I.  The Commission Is Entitled to Summary Judgment Based on Defendants' Guilty
       Pleas to Securities Fraud in the Criminal Action.........................................................6

       A.  Legal Standard for Summary Judgment.........................................................6

       B.  Legal Standard for Collateral Estoppel Based on Guilty Pleas.....................6

    II.  Defendants' Guilty Pleas Estop Them from Denying All of the Commission's
       Claims ..........................................................................................................................8

       A.  Defendants' Criminal Convictions for Violating Exchange Act Section 10(b) and
           Rule 10b-5 Thereunder Preclude Relitigation of These Same Claims .........8

       B.  Defendants' Section 10(b) Convictions Automatically Establish Their
           Civil Liability Under Section 17(a) ............................................................10

       C.  Paul and Quay Are Liable Under Sections 206(1) and 206(2) of the
           Advisers Act...............................................................................................11

       D.  Paul is Liable Under Section 206(4) and Rule 206(4)-1(a)(5)....................13

    III.  The Court Should Enter Final Judgment Imposing Permanent Injunctions
        and Ordering Disgorgement.......................................................................................14

       A.  Permanent Injunctions Are Warranted Against Paul and Quay...................15

       B.  Legal Standard for Disgorgement and Prejudgment Interest.......................17

          1.  Paul's Disgorgement and Prejudgment Interest Calculation ................18

          2.  Quay's Disgorgement and Prejudgment Interest Calculation................20

CONCLUSION...........................................................................................................................20

## Table of Authorities

**Cases**                                                                                                   **Page(s)**

*Aaron v. SEC,*
    446 U.S. 680 (1980) ..............................................................................................................11

*Allen v. McCurry,*
    449 U.S. 90 (1980) ................................................................................................................7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..............................................................................................................6

*Liu v. SEC,*
    140 S. Ct. 1936 (2020)....................................................................................................19, 20

*Abrahamson v. Fleschner,*
    568 F.2d 862 (2d Cir. 1977) ...............................................................................................12

*Anderson v. Comm'r of Internal Revenue,*
    698 F.3d 160 (3d Cir. 2012) ..............................................................................................7, 8

*In re Graham,*
    973 F.2d 1089 (3d Cir. 1992) ........................................................................................... 6-7

*SEC v. Bilzerian,*
    29 F.3d 689 (D.C. Cir. 1994)................................................................................................7

*SEC v. Bonan Huang,*
    684 Fed. Appx. 167 (3d Cir. 2017)......................................................................................17

*SEC v. Bonastia,*
614 F.2d 908 (3d Cir. 1980)..................................................................................................15

*SEC v. First Jersey Secs., Inc.,*
    101 F.3d 1450 (2d Cir. 1996) .............................................................................................18

*SEC v. Hughes Cap. Corp.,*
    124 F.3d 449 (3d Cir. 1997) .........................................................................................19, 20

*SEC v. Johnson,*
    174 Fed. Appx. 111 (3d Cir. Apr. 5, 2006) .................................................................... 15-16

*SEC v. Monarch Funding Corp.,*
    192 F.3d 295 (2d Cir. 1999) ...............................................................................................11

*SEC v. Teo,*
    746 F.3d 90 (3d Cir. 2014) .................................................................................................17

*SEC v. Warde*,
    151 F.3d 42 (2d Cir. 1998) ................................................................................ 17-18

*United States ex rel. Doe v. Heart Solution, PC*,
    923 F.3d 308 (3d Cir. 2019) ..................................................................................6, 7

*United States v. Podell*,
    572 F.2d 31 (2d Cir.1978) ........................................................................................8

*Williams v. Comm'r of Internal Revenue*,
    498 Fed. Appx. 284 (4th Cir. 2012) .........................................................................7

*Arnold v. Afflerbach,*
    No. 10-cv-5742, 2012 WL 993706 (E.D. Pa. Mar. 26, 2012) ...................................4

*Burson v. Forge,*
    No. 08-cv-2251, 2008 WL 11506228 (N.D. Ohio, Dec. 19, 2008).............................7

*Maraville Music Corp. v. TRP Entm't, LLC*,
    07-cv-1361, 2008 WL 11389174 (D. Nev. June 30, 2008) ......................................7

*Milas v. City of Philadelphia,*
    No. 04-cv-5258, 2005 WL 3263039 (E.D. Pa. Nov. 30, 2005)..................................4

*Prillerman v. City of Philadelphia,*
    414 F. Supp. 3d 724 (E.D. Pa. 2019) ......................................................................6

*SEC v. Apostelos*,
    No. 15-cv-00699, 2019 WL 3944755 (S.D. Ohio Aug. 21, 2019)...........................16

*SEC v. Battoo*,
    158 F. Supp. 3d 676 (N.D. Ill. 2016).......................................................................13

*SEC v. Berger*,
    244 F. Supp. 2d 180 (S.D.N.Y. 2001) .....................................................................12

*SEC v. Blackwell*,
    No. 11-cv-0234, 2012 WL 13564 (N.D. Tex. Jan. 4, 2012) .....................................18

*SEC v. Catledge*,
    No. 12-cv-887, 2020 WL 3621311 (D. Nev. July 2, 2020).......................................20

*SEC v. Chapman,*
    No. 13-cv-5648, 2021 WL 199539 (E.D. Pa. Jan. 20, 2021) ......................16, 19, 20

*SEC v. Clay Cap. Mgmt.*,
   No. 11-cv-5020, 2013 WL 5946989 (D.N.J. Nov. 6, 2013)............................................7, 8, 10

*SEC v. Desai*,
   145 F. Supp. 3d 329 (D.N.J. 2015).........................................................................7, 8, 11, 15

*SEC v. Freeman*,
    290 F. Supp. 2d 401 (S.D.N.Y. 2003).................................................................................10

*SEC v. Genovese*,
   553 F. Supp. 3d 24 (S.D.N.Y. 2021) ........................................................................9, 11, 13

*SEC v. Graulich*,
   No. 09-cv-04355, 2013 WL 3146862 (D.N.J. June 19, 2013) ..............................................18

*SEC v. Haligiannis*,
   470 F. Supp. 2d 373 (S.D.N.Y. 2007) ...............................................................10, 11, 12, 13

*SEC v. Langford*,
   No. 08-cv-761, 2011 WL 13228240 (N.D. Ala. Aug. 8, 2011)...............................................16

*SEC v. Locke Cap. Mgmt., Inc.*,
   794 F. Supp. 2d 355 (D.R.I. 2011)  ...............................................................................13, 14

*SEC v. Mattera,*
   No. 11-cv-8323, 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013)...............................................10

*SEC v. Mogler*,
   No. 15-cv-01814, 2020 WL 1065865 (D. Ariz. Mar. 5, 2020) ..............................................16

*SEC v. Moody*,
   No. 18-cv-442, 2019 WL 2494421 (E.D. Va. June 11, 2019)................................................11

*SEC v. Moran*,
   944 F. Supp. 286 (S.D.N.Y. 1996) .....................................................................................17

*SEC v. Muraca*,
   No. 17-cv-11400, 2019 WL 6619297 (D. Mass. Dec. 5, 2019) .............................................16

*SEC v. Pardue*,
   367 F. Supp. 2d 773 (E.D. Pa. 2005)...................................................................................17

*SEC v. Parker,*
   No. 15-cv-1535, 2020 WL 6899795 (W.D. Pa. Nov. 24, 2020) ..............................................8

*SEC v. Roor*,
   No. 99-cv-3372, 2004 WL 1933578 (S.D.N.Y. Aug. 30, 2004) ........................................8, 10

*SEC v. Watermark Fin. Servs. Grp., Inc.*,
  No. 08-cv-361S, 2012 WL 501450 (W.D.N.Y. Feb. 14, 2012) ................................................18

*SEC v. Young*,
  No. 09-cv-1634, 2011 WL 1376045 (E.D. Pa. Apr. 12, 2011) ..........................................12, 13

*United States v. Ellis, et al.*,
  No. 2:17-cr-371 (E.D. Pa.) ...............................................................................................1

*United States v. Richlyn Labs., Inc.*,
  827 F. Supp. 1145 (E.D. Pa. 1992)...........................................................................16

**Statutes and Rules**

15 U.S.C. § 77q........................................................................................................2, 11

15 U.S.C. § 77t.............................................................................................................15

15 U.S.C. § 78j...........................................................................................................2, 3

15 U.S.C. § 78u.......................................................................................................15, 17

15 U.S.C. § 80b–2........................................................................................................12

15 U.S.C. § 80b-6 ...................................................................................................2, 3, 12

15 U.S.C. § 80b-9 ........................................................................................................15

17 C.F.R. § 240.10b-5...............................................................................................2, 3

17 C.F.R. § 275.206(4)-1(a)(5)................................................................................2, 3, 14

18 U.S.C. § 1348.....................................................................................................3, 4, 9

Federal Rule of Civil Procedure 8 ...................................................................................4

Federal Rule of Civil Procedure 56 ..............................................................................1, 6

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Order of June 30, 2022 (Dkt. No. 50), the Securities and Exchange Commission (the "Commission") submits this Memorandum of Law in support of its Motion for Summary Judgment against Joseph Andrew Paul ("Paul") and James Quay ("Quay") (together, "Defendants"). Paul and Quay were convicted of securities fraud in the parallel criminal case, *United States v. Ellis, et al.*, No. 2:17-cr-371 (E.D. Pa.) (the "Criminal Action"). Their guilty pleas leave no disputed question of material fact to resolve in this case. Accordingly, the Commission respectfully requests that the Court enter a final judgment against the Defendants and order the other relief requested herein.

As set forth below and in the Commission's statement of undisputed material facts ("SOF"), this case and the Criminal Action both stem from the Defendants' roles in two overlapping investment fraud schemes. Paul and co-defendant John D. Ellis, Jr. ("Ellis") orchestrated the offering fraud through their jointly-owned investment advisory firm Paul Ellis Investment Associates, LLC ("PEIA"), and recruited Quay and Donald H. Ellison ("Ellison") to solicit clients on their behalf.[1] Paul and Ellis used fraudulent offering and marketing materials to induce investors with the Summit Trust Company ("Summit" or the "Summit Investors") to invest $2.6 million with PEIA. The Summit Investors ultimately lost those funds. Paul and Ellis also worked with Quay, a disbarred attorney previously convicted of tax fraud, to solicit funds from investors with Aptus Planning LLC ("Aptus" or the "Aptus Investors"), a purported senior planning firm co-founded by Quay. Using PEIA's fraudulent marketing materials, Quay induced 13 investors to entrust him and PEIA with nearly $1.3 million. All but two Aptus Investors lost their entire investment.

---

[1] Defendants Ellis and Ellison previously settled with the Commission by consenting to final judgments that included injunctive relief and disgorgement of ill-gotten gains. *See* Dkt. Nos. 31, 32, 38 and 40.

The Defendants pleaded guilty to securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Their convictions in the Criminal Action for the same conduct alleged in the Commission's complaint trigger collateral estoppel in this case. Accordingly, the Defendants are estopped from challenging the facts established through their guilty pleas. The same facts that establish Defendants' violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, also establish their violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]. Together with other undisputed facts, the Defendants' securities fraud convictions also establish that they both violated Sections 206(1) and 206(2) of the Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)], and that Paul violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-1(a)(5) thereunder [17 C.F.R. § 275.206(4)-1(a)(5)].

To remedy these violations and deter future misconduct, the Commission respectfully requests that the Court enter a final judgment against Defendants that permanently enjoins them from future violations of the antifraud provisions of the federal securities laws and orders disgorgement of ill-gotten gains, together with prejudgment interest thereon.

## PROCEDURAL HISTORY

On April 1, 2016, the Commission filed a complaint against Quay, Paul, Ellis, and Ellison alleging violations of federal securities laws involving the Summit Investors and the Aptus Investors. [2] Dkt. No. 1. The complaint alleged that Paul and Quay violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. §

---

[2] The citations herein are to the Commission's Statement of Undisputed Material Facts ("SMF") and the exhibits ("Ex.") attached thereto. Docket entries in this case are referenced as "Dkt." and those from the Criminal Action are referenced as "Crim. Dkt."

78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].  Compl. ¶¶ 47-55. The complaint also alleged that Paul violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and its Rule 206(4)-1(a)(5) [17 C.F.R. § 275.206(4)-1(a)(5)]. Compl. ¶¶ 59-64.

On or about July 20, 2017, the Court unimpounded the Indictment in the Criminal Action.  Crim. Dkt. No. 4.  The Indictment alleged that Defendants committed securities fraud in violation of 18 U.S.C. § 1348 (Counts One and Two), and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] (Count Three). Crim. Dkt. No. 1; Ex. 1 (Indictment).  These allegations concerned Paul's and Quay's involvement with Paul-Ellis Investment Associates ("PEIA"), a registered investment adviser.  Count One related to funds Paul obtained from the Summit Investors between September 2010 and April 1, 2011; Counts Two and Three concerned funds Paul and Quay obtained from the Aptus Investors between January 2011 and May 2013.  *See* Ex. 1.

On September 28, 2017, the Court granted the motion of the United States Attorney's Office to intervene and stay this case pending resolution of the Criminal Action.  Dkt. No. 30. During the pendency of the stay, however, Ellison and Ellis settled with the Commission and consented to the entry of a final judgment against them.  The Court entered a final judgment against Ellison on October 18, 2017, and against Ellis on May 27, 2021.  Dkt. Nos. 32, 40.

Both Defendants meanwhile pleaded guilty in the Criminal Action.  Quay pleaded guilty on June 14, 2019, to two counts of securities fraud in violation of 18 U.S.C. § 1348 and Section 10(b) and Rule 10b-5 thereunder.  Crim. Dkt. No. 122.  The Court in the Criminal Action entered judgment against him on February 18, 2020, sentencing him to 125 months' imprisonment and five years of supervised release, and ordering him to pay $1,253,349 in restitution.  Crim. Dkt.

No. 151; Ex. 4.  Paul subsequently pleaded guilty to three counts of securities fraud in violation of 18 U.S.C. § 1348 and Section 10(b) and Rule 10b-5 thereunder on December 17, 2018.  Crim. Dkt. No. 97.  The Court in the Criminal Action entered judgment against Paul on June 29, 2021, sentencing him to 34 months' imprisonment and five years of supervised release, and ordering him to pay $1,511,931 in restitution.  Crim. Dkt. No. 194; Ex. 2.  The Court further ordered that Paul's restitution obligation was joint and several with his co-defendants, Quay and Ellis.  Ex. 2 at 6.

On June 30, 2022, with the Criminal Action resolved, the Court granted the Commission's motion to lift the stay in this case.  Dkt. No. 50.  The Commission now seeks to conclude this case through its motion for summary judgment.

## STATEMENT OF FACTS

The Commission relies on its Statement of Undisputed Material Facts ("SOF"), together with the declarations, exhibits, and other materials submitted in support of the factual statements. A brief summary of these facts follows below.[3]

Paul and Ellis co-founded PEIA, a Pennsylvania corporation registered with the Commission as an investment adviser.  SOF ¶¶ 12-14.  As a registered investment adviser, PEIA filed required Forms ADV with the Commission.  SOF ¶ 15.  Paul helped to prepare these forms, on which PEIA claimed it managed $30 million in assets.  SOF ¶¶ 15-17.  In fact, as Paul later

---

[3] The Commission served Paul and Quay with the summons and complaint in this case on May 12, 2016.  Dkt. Nos. 6, 8.  Their responses were due on June 2, 2016.  Because neither Paul nor Quay filed a responsive pleading, the Court may deem the Commission's allegations admitted.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see, e.g.*, *Arnold v. Afflerbach*, No. 10-cv-5742, 2012 WL 993706, at *1 (E.D. Pa. Mar. 26, 2012) (deeming allegations in complaint admitted for purposes of summary judgment where defendant failed to file an answer, and thus "relieved Plaintiff of proving his case factually."); *Milas v. City of Philadelphia*, No. 04-cv-5258, 2005 WL 3263039, at *5-6 (E.D. Pa. Nov. 30, 2005) (noting that party's failure to "file a responsive pleading at all" to deny allegations of complaint constituted "in effect, an admission that the allegations are true.").

4

admitted, PEIA never managed even half that amount.  SOF ¶¶ 30-31.  Paul also helped to create offering and marketing materials for PEIA.  SOF ¶¶ 25-26.  These materials included purported performance data and other information which did not accurately reflect PEIA's performance, but rather had been copied from other sources including the website of another investment adviser.  SOF ¶¶ 27-29.

In mid-September of 2010, Paul and Ellis met with officers of the Summit.  They showed Summit officers materials purporting to show that PEIA had $150 million in assets under advisement, and that PEIA had generated average annual returns of 25.13% between 2000 and 2009 with its "Strategic Growth Portfolio."  SOF ¶¶ 33-35.  At a second meeting with Summit in December of 2010, Paul and Ellis again presented false annual return data.  SOF ¶¶ 38-39.  Following these meetings, Summit invested $2,672,573 with PEIA.  Summit would ultimately suffer losses of $744,330 when it withdrew the last of its funds from PEIA in November 2011.  SOF ¶ 43.  In particular, between April 1, 2011 and April 1, 2016, Summit lost $400,000 of its investment with PEIA.  SOF ¶ 46.

In 2011, Paul and Ellis marketed PEIA to Quay.  SOF ¶ 47.  Quay had co-founded Aptus, a Florida-based company which solicited estate-planning clients at free dinner seminars in the Tampa area.  SOF ¶¶ 18-21.  Quay used materials Paul and Ellis provided to him to market PEIA to his Aptus clients.  In particular, Quay used a "Volatility Arbitrage Portfolio" brochure (the "VAP Brochure") which stated that PEIA's strategy risked only 10% of an investor's principal while generating annual returns of over 46% between 2008 and July 2011.  These statements in the VAP Brochure were false.  SOF ¶¶ 49-51.  Quay made no effort to verify these statements.  SOF ¶ 52.  Nevertheless, using these materials, he successfully solicited fourteen Aptus clients to invest a total of approximately $1,295,000 in PEIA.  SOF ¶¶ 56-57.  Paul and Ellis had used

5

investor funds to pay their personal and business expenses, while Quay used $385,900 for trading, including to satisfy outstanding margin calls in his own brokerage account. SOF ¶¶ 60-64. Approximately $1,153,504 of the Aptus Investors' funds ultimately were lost. SOF ¶ 68.

## ARGUMENT

**I.    The Commission Is Entitled to Summary Judgment Based on Defendants' Guilty Pleas to Securities Fraud in the Criminal Action**

### A.    Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Prillerman v. City of Philadelphia*, 414 F. Supp. 3d 724, 726 (E.D. Pa. 2019). The Court's inquiry hinges on whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The burden then shifts to the defendant to dispute that showing with specific evidentiary facts. *Id.*; *see also* Fed. R. Civ. P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### B.    Legal Standard for Collateral Estoppel Based on Guilty Pleas

"[C]ollateral estoppel applies when '(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'" *United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308, 316 (3d Cir. 2019) (quoting *In re*

6

*Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).  The non-moving party also must have had a

"'full and fair opportunity'" to litigate the issue in the prior case.  *Id.* (quoting *Allen v. McCurry*,

449 U.S. 90, 95 (1980)).

Guilty pleas in criminal cases may trigger collateral estoppel in related civil actions.  *See*

*Anderson v. Comm'r of Internal Revenue*, 698 F.3d 160, 164, 167 (3d Cir. 2012) (affirming

summary judgment on grounds of collateral estoppel arising from defendant's guilty plea to

criminal tax evasion); *Williams v. Comm'r of Internal Revenue*, 498 Fed. Appx. 284, 291 (4th

Cir. 2012) (concluding that defendant could not deny liability in civil action after guilty plea and

allocution in related criminal case).  A plea's preclusive effect "extends to all issues that are

necessarily admitted in the plea."  *Anderson*, 698 F.3d at 164; *see also SEC v. Desai*, 145 F.

Supp. 3d 329, 334 (D.N.J. 2015) ("The Third Circuit has held that, '[w]here … a conviction is

the result of a guilty plea, its preclusive effect extends to all issues that are necessarily admitted

in the plea.'") (quoting *Anderson*, 698 F.3d at 164).  Courts examine the criminal action's record

to determine which issues were decided, resolving reasonable doubts in favor of the non-movant.

*Heart Solution*, 923 F.3d at 316; *see also SEC v. Clay Cap. Mgmt. LLC*, No. 11-cv-5020, 2013

WL 5946989, at *3-4 (D.N.J. Nov. 6, 2013).[4]  However, criminal and civil actions need not

involve identical statutes for a guilty plea to collaterally estop a civil defendant.  Rather, courts

look to the factual issues resolved in the criminal action to determine the scope of estoppel

applicable in the civil case.  *SEC v. Bilzerian*, 29 F.3d 689, 694-95 (D.C. Cir. 1994); *Desai*, 145

F. Supp. 3d at 334.

---

[4] The Court may also consider records sealed to the court by another judge. *Burson v. Forge*, No. 08-cv-2251, 2008 WL 11506228, at *5 (N.D. Ohio, Dec. 19, 2008) (noting "[w]hile the act of sealing a record may remove that document from public view, any judge assigned to the case would still have the right to view it."); *Maraville Music Corp. v. TRP Entm't, LLC*, No. 07-cv-1361, 2008 WL 11389174, at *3-4 (D. Nev. June 30, 2008).  Such materials include Paul's change-of-plea in the Criminal Action, which remains under seal.

Collateral estoppel precludes a defendant from denying or disputing facts he admitted in his guilty plea. *Anderson*, 698 F.3d at 164; *see also SEC v. Roor*, No. 99-cv-3372, 2004 WL 1933578, at *7 (S.D.N.Y. Aug. 30, 2004) ("It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.") (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)). Those admissions serve as undisputed facts in a court's summary judgment analysis. Accordingly, Courts in this Circuit have granted the Commission's motions for summary judgment in cases involving defendants convicted of securities fraud in parallel criminal actions. *See, e.g., SEC v. Parker,* No. 15-cv-1535, 2020 WL 6899795, at *1 (W.D. Pa. Nov. 24, 2020); *Desai*, 145 F. Supp. 3d at 331, 333; *Clay Cap. Mgmt.*, 2013 WL 5946989, at *4.

As detailed below, all of the facts necessary to establish liability for each of the Commission's claims were established against the Defendants in the form of their criminal convictions or are otherwise undisputed. Defendants had a full and fair opportunity to litigate these issues in the Criminal Action, where they were represented by counsel, and pleaded guilty to the securities fraud charges against them. They should be estopped from relitigating the securities fraud violations alleged in this case.

## II.    Defendants' Guilty Pleas Estop Them from Denying All of the Commission's Claims

### A. Defendants' Criminal Convictions for Violating Exchange Act Section 10(b) and Rule 10b-5 Thereunder Preclude Relitigation of These Same Claims

The Commission is entitled to summary judgment on its Section 10(b) and Rule 10b-5 claims because Quay and Paul pleaded guilty to criminal violations of the same provisions for

8

the same conduct.[5]  Specifically, Paul and Quay pleaded guilty to Count Three of the Indictment which charged them with securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  SOF ¶¶ 4, 6.  The Commission likewise alleged violations of Section 10(b) and Rule 10b-5 in the complaint based on the same factual predicate that formed the basis for the criminal charges.

"To determine whether the legal and factual issues raised in a subsequent civil action are identical to a prior criminal proceeding, courts routinely compare the criminal indictment with the civil complaint."  *SEC v. Genovese*, 553 F. Supp. 3d 24, 42 (S.D.N.Y. 2021) (internal quotation and citation omitted).  In this case, it is clear that the same factual allegations formed the basis for the Criminal Action and the civil case, that is: the creation of fraudulent offering materials by Paul and Ellis (*compare* Compl. ¶¶ 19-24 *and* Indictment Count One, ¶¶ 9-11); Paul's role in defrauding the Summit Investors (*compare* Compl. ¶¶ 25-31 *and* Indictment Count One, ¶¶ 10-13); and Quay's role, together with Paul, in defrauding the Aptus Investors (*compare* Compl. ¶¶ 32-39 *and* Indictment, Count Two, ¶¶ 1-14); followed by Paul, together with Ellis, stealing funds taken from the Aptus Investors (*compare* Compl. ¶¶ 40-44 *and* Indictment, Count Two, ¶¶ 15, 20, 23) and Quay losing those investors' remaining funds through unauthorized trading (*compare* Compl. ¶¶ 45-46 *and* Indictment, Count Two, ¶¶ 16-19, 22).

The issues sought to be precluded here are thus clearly the same as those involved in the Criminal Action.  Indeed, the Commission's claims are identical to the charges that Defendants admitted in the Criminal Action, "the only difference being the burden of proof necessary to

---

[5] Paul and Quay also pleaded guilty to securities fraud in violation of Title 18, United State Code, Section 1348, which requires a showing that: (1) the defendant knowingly devised or willfully participated in "a scheme or artifice to defraud"; (2) the defendant had "fraudulent intent"; and (3) the "scheme or artifice to defraud" was "in connection with" a security of a certain issuer or with certain filing requirements.  *See United States v. Ramsey*, 565 F. Supp. 3d 641, 643 (E.D. Pa. 2021).

establish liability." *See SEC v. Mattera*, No. 11-cv-8323, 2013 WL 6485949, at *8 (S.D.N.Y.

Dec. 9, 2013). In the securities fraud context, the elements necessary to establish civil liability

under Section 10(b) "are identical to those necessary to establish criminal liability under Section

10(b)." *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007). "Having

unambiguously admitted to each of these facts at [their] plea hearing, [Defendants] cannot create

an issue of material fact by now disputing the veracity of his prior admission." *Clay Cap.*

*Mgmt.*, 2013 WL 5946989, at *4.

Quay and Paul manifestly had a full and fair opportunity to litigate these issues in the

Criminal Action. Their liability was actually litigated and has been determined by a valid and

final judgment through their conviction by plea. The Defendants' convictions are thus

dispositive as to the Commission's claims under Section 10(b) and Rule 10b-5. *See, e.g.*, *SEC v.*

*Freeman*, 290 F. Supp. 2d 401, 405-06 (S.D.N.Y. 2003); *see also Roor*, 2004 WL 1933578, at *7

(noting that the question of "civil liability" for securities fraud was easily established where the

defendant "has already pleaded guilty to a portion of the conduct at issue in this enforcement

action"). The Court should grant the Commission summary judgment against the Defendants on

the Commission's Section 10(b) and Rule 10b-5 causes of action.

**B. Defendants' Section 10(b) Convictions Conclusively Establish Their Civil Liability Under Section 17(a)**

Section 17(a) of the Securities Act prohibits "in the offer or sale of securities," by the use

of interstate commerce or the mails, directly or indirectly: (1) employing "any device, scheme, or

artifice to defraud;" (2) obtaining "money or property by means of any untrue statement of a

material fact or any omission to state a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;" and (3)

engaging in "any transaction, practice or course of business which operates or would operate as a

10

fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a).[6]  The elements the Commission must prove to establish a violation of Section 17(a) of the Securities Act are "essentially the same" as those it must prove to show a violation of Section 10(b) of the Exchange Act.  *Desai*, 145 F. Supp. 3d at 335; *see also SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *Haligiannis*, 470 F. Supp. 2d at 381.  Therefore, "[c]ourts apply nearly identical tests for determining liability under Section 17(a), Section 10(b), and Rule 10b–5." *SEC v. Moody*, No. 18-cv-442, 2019 WL 2494421, at *1 (E.D. Va. June 11, 2019) (internal quotations and citations omitted); *see also Monarch Funding Corp.*, 192 F.3d at 308.

Paul's and Quay's guilty pleas and criminal convictions for violations of Section 10(b) and Rule 10b-5 thus cement their civil liability under Section 17(a).  *See, e.g.*, *Genovese*, 553 F. Supp. 3d at 41-42 (applying collateral estoppel where defendant's guilty plea to securities fraud "and the SEC's claims alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5, Section 17(a) of the Securities Act, and Section 206 of the Advisers Act and Rule 206(4)-8 involve the same factual predicate and legal elements").  The scheme the Defendants admitted in their guilty pleas concerned their fraudulent statements to the Summit Investors and the Aptus Investors, including in the offering materials used to induce their victims to invest with PEIA. *See* SOF ¶¶ 8-9, 33-46, 47-68.  Because Paul and Quay have pleaded guilty to criminal violations of securities fraud against the Summit Investors and Aptus Investors, the Court should thus grant summary judgment against the Defendants on the Commission's Section 17(a) claims.

### C.  Paul and Quay Are Liable Under Sections 206(1) and 206(2) of the Advisers Act

Sections 206(1) and 206(2) of the Advisers Act make it unlawful for an investment adviser, by use of the mails or any means of interstate commerce, to employ any device, scheme

---

[6] While scienter is required to prove a violation of Section 17(a)(1), Section 10(b), and Rule 10b–5, Sections 17(a)(2) and (3) are proven by showing a defendant acted negligently.  *Aaron v. SEC*, 446 U.S. 680, 697 (1980).

11

or artifice to defraud, or to engage in any act, transaction, practice or course of business that operates as a fraud upon, "any client or prospective client." *See* 15 U.S.C. § 80b-6(1), (2). The Advisers Act defines investment adviser as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities ...." 15 U.S.C. § 80b–2(a)(11). This definition encompasses anyone who manages the funds of others for compensation or controls an investment advisory firm. *SEC v. Berger*, 244 F. Supp. 2d 180, 192 (S.D.N.Y. 2001). While Section 206(1) of the Advisers Act requires proof of fraudulent intent, Section 206(2) simply requires proof of negligence. Moreover, "facts showing a violation of Sections 10(b) or 17(a) by an investment advisor will also support a showing of a Section 206 violation." *Id.; see also Haligiannis,* 470 F. Supp. 2d at 383; *SEC v. Young*, No. 09-cv-1634, 2011 WL 1376045, at *7 (E.D. Pa. Apr. 12, 2011).

The undisputed facts establish that Paul and Quay were acting as investment advisers within the meaning of the Advisers Act. Paul co-founded PEIA, knew that it was a registered investment adviser with the Commission, and created fraudulent offering materials to solicit investment in PEIA. SOF ¶¶ 11, 14-17, 25; *see also* Ex. 1 ("PEIA became a registered investment adviser with the SEC on September 2, 2009). Paul, through PEIA, charged advisory fees to the victim Summit Investors. SOF ¶¶ 44-45. Paul and Quay made recommendations to the victims to invest with PEIA and controlled the victim investors' funds. *See* SOF 25, 38, 48, 53-54; *see also Abrahamson v. Fleschner,* 568 F.2d 862, 870 (2d Cir. 1977) (noting that people "who managed the funds of others for compensation are 'investment advisers' within the meaning of the statute."). Quay traded investor funds and falsely told investors that he was generating positive returns for them. SOF ¶ 66. Both Defendants were thus acting as investment

12

advisers under the Advisers Act.  *See SEC v. Battoo*, 158 F. Supp. 3d 676, 698 (N.D. Ill. 2016) ("Making investment recommendations and controlling clients' investments qualify as providing investment advice under the Advisers Act.").

By virtue of the same misconduct addressed above, as investment advisers, Paul and Quay necessarily violated Sections 206(1) and 206(2) when they violated Section 17(a) and Section 10(b).  *See Haligiannis*, 470 F. Supp. 2d at 383 ("Together with their liability for violating Section 17(a) and 10(b), this management role with respect to [a hudge fund] is adequate to support liability for these entities under the Advisers Act."); *Genovese*, 553 F. Supp. 3d at 41-42 (applying collateral estoppel where defendant's guilty plea to securities fraud "and the SEC's claims alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5, Section 17(a) of the Securities Act, and Section 206 of the Advisers Act ... involve the same factual predicate and legal elements"); *see also Young*, 2011 WL 1376045, at *7.  The Court should accordingly grant the Commission summary judgment against the Defendants on its Section 206(1) and 206(2) claims.

### D.  Paul is Liable Under Section 206(4) and Rule 206(4)-1(a)(5)

Section 206(4) provides that it shall be unlawful for any investment adviser "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b–6(4); *see also SEC v. Locke Cap. Mgmt., Inc.*, 794 F. Supp. 2d 355, 368 (D.R.I. 2011) ("Section 206(4) of the Advisers Act and Rule 206(4)–1(a)(5) make it unlawful for an investment adviser to distribute advertising materials that contain untrue statements of material facts or are otherwise false or misleading.").  The elements of Section 206(4) of the Advisers Act are identical to those under Section 206(1), with the exception that proof scienter is not required. *See Young*, 2011 WL 1376045, at *7 ("Although scienter is required in connection with Section

13

206(1), it is not required in connection with Sections 206(2) or 206(4).").  Rule 206(4)–1(a)(5), promulgated under this section, further prohibits the publication of any advertisement "[w]hich contains any untrue statement of a material fact, or which is otherwise false or misleading."  17 C.F.R. § 275.206(4)–1(a)(5).

Paul's admitted role in the production of PEIA's fraudulent materials, used to defraud the Summit Investors and Aptus Investors, satisfies these elements.  *See* SOF ¶¶ 25-31.  Paul created and distributed offering materials that fraudulently represented, among other things, that PEIA had between $150 million and $164 million in "assets under advisement," when PEIA never managed more than $4 million dollars during the relevant time period.  SOF ¶¶ 25-31.  By violating Sections 206(1) and 206(2) in this manner, Paul necessarily violated Section 206(4) and Rule 206(4)–1(a)(5).  *See Locke Cap. Mgmt., Inc.*, 794 F. Supp. 2d at 368 (holding that defendant violated Section 206(4) of the Advisers Act and Rule 206(4)–1(a)(5) thereunder by "distributing marketing materials and, during the Commission's 2008 examination, producing books and records containing material untrue statements about … assets under management").  Therefore, the Court should grant the Commission summary judgment against Defendant Paul on its Section 206(4) of the Advisers Act and Rule 206(4)–1(a)(5) claims.

## III.     The Court Should Enter Final Judgment Imposing Permanent Injunctions and Ordering Disgorgement and Prejudgment Interest

The Commission seeks a final judgment against Paul that (1) permanently enjoins him from future violations of the securities laws; and (2) orders him to pay disgorgement of $1,169,804 (of which $1,153,504 is joint and several with Quay) together with prejudgment interest of $142,013, but deems these amounts satisfied by the order of restitution of $1,511,931 in the Criminal Action. The Commission seeks a final judgment against Quay that (1) permanently enjoins him from future violations of the securities laws; and (2) orders him to pay

14

disgorgement of $1,153,504, jointly and severally with Paul, together with prejudgment interest of $140,034, for a total of $1,293,538; and (3) offsets $1,253,239 of Quay's monetary judgment by the order of restitution in that same amount in the Criminal Action, for a remaining balance due on the judgment of $40,299.

### A. Permanent Injunctions Are Warranted Against Paul and Quay

The Securities Act, the Exchange Act, and the Advisers Act provide that, upon a proper showing, a permanent injunction shall be granted in an enforcement action brought by the Commission. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1), 80b-9(d). To obtain permanent injunctive relief, the Commission must show "there is a reasonable likelihood that the defendant, if not enjoined, will engage in the illegal conduct." *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). This analysis is informed by a "totality of the circumstances surrounding the particular defendant and the past violations." *Id.* Courts also consider "the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur." *Id.*; *see also Desai*, 145 F. Supp. 3d at 337. These factors support enjoining Paul and Quay.

The Defendants violated the federal securities laws over an extended time period with a high degree of scienter. They misappropriated funds from multiple investors for their own benefit, and attempted to conceal their misconduct by telling their victims their investments were performing well. *See* SOF ¶ 66. Such efforts by Defendants "to mask [their] violations of federal securities laws demonstrates a high degree of scienter." *Desai*, 145 F. Supp. 3d at 337 (citation omitted). The Defendants' "egregious and persistent" criminal conduct demonstrates a high likelihood that both will violate these laws again if not enjoined. *See SEC v. Johnson*, 174

15

Fed. Appx. 111, 116 (3d Cir. Apr. 5, 2006); *see also SEC v. Chapman,* No. 13-cv-5648, 2021 WL 199539, at *7 (E.D. Pa. Jan. 20, 2021) (finding that defendant's "guilty plea established that he acted with a high degree of scienter in defrauding borrowers").  Moreover, Quay is a recidivist who defrauded the Aptus Investors after having been convicted of tax fraud and disbarred from practicing law.  SOF ¶¶ 22-24.  Prior illegal conduct is a sufficient basis for a court to infer that there is a likelihood a defendant will again violate the securities laws.  *See United States v. Richlyn Labs., Inc.*, 827 F. Supp. 1145, 1150 (E.D. Pa. 1992) (stating that "past misconduct … is highly suggestive of the likelihood of future violations … suggesting that the infraction might not have been an isolated occurrence").

Courts routinely grant the Commission's request for the entry of a permanent injunction where there is a parallel criminal proceeding.  *See, e.g., Chapman,* 2021 WL 199539, at *7; *SEC v. Mogler*, No. 15-cv-01814, 2020 WL 1065865, at *11 (D. Ariz. Mar. 5, 2020) (ordering injunction where defendant pleaded guilty in parallel criminal case, thereby admitting "a high level of scienter" in scheme that "lasted several years and involved approximately $18 million in funds"); *SEC v. Apostelos*, No. 15-cv-00699, 2019 WL 3944755, at *14 (S.D. Ohio Aug. 21, 2019) (finding defendant's "guilty plea is not enough to outweigh the other factors" that demonstrated "a substantial likelihood that [defendant], if not enjoined, would violate the securities laws in the future").  The Defendants' criminal prosecution does not negate the risk that they will violate the federal securities laws in the future.  *See, e.g.*, *SEC v. Muraca*, No. 17-cv-11400, 2019 WL 6619297, at *8 (D. Mass. Dec. 5, 2019) (finding defendant "sufficiently likely to commit future violations to warrant an injunction" even though "currently imprisoned" based on "the fact that the scheme involved multiple misrepresentations over a prolonged period of time"); *SEC v. Langford*, No. 08-cv-761, 2011 WL 13228240, at *5 (N.D. Ala. Aug. 8, 2011)

16

("[A]lthough [Defendant] is currently serving a prison sentence for his crimes and thus not able to re-offend in the near future, … the egregiousness and repetitive nature of [his] conduct justifies the injunction."). The Defendants' willingness to deceive investors, and their skill at doing so, creates a substantial risk that they will again violate the securities laws. Therefore, the requested injunctions should issue.

### B.    Legal Standard for Disgorgement and Prejudgment Interest

The Commission seeks disgorgement of the ill-gotten gains obtained as a result of Defendants' offering fraud, together with prejudgment interest. Courts enjoy the authority to order disgorgement of ill-gotten gains in the Commission's enforcement actions. *See SEC v. Teo*, 746 F.3d 90, 105-06 (3d Cir. 2014); *see also* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement"). An order of disgorgement serves to "deprive a wrongdoer of his unjust enrichment" and "deter others from violating the securities laws." *Teo*, 746 F.3d at 105 (citation omitted); *see also SEC v. Bonan Huang*, 684 Fed. Appx. 167, 175–76 (3d Cir. 2017); *SEC v. Pardue*, 367 F. Supp. 2d 773, 778 (E.D. Pa. 2005) ("[D]isgorgement is a method of forcing a defendant to give up the amount by which he was unjustly enriched."). Disgorgement need only be a "reasonable approximation" of profits causally connected to the securities law violations. *Teo*, 746 F.3d at 107.

The Court also has broad discretion in determining whether to grant prejudgment interest and in what amount. The purpose of ordering payment of prejudgment interest is to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996); *see also SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998) (explaining that prejudgment interest may be awarded for the time

17

period when "'defendant ... had use of unlawful profits'") (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996)). The Commission calculates prejudgment interest using the Internal Revenue Service ("IRS") underpayment rate which "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." *First Jersey Secs., Inc.*, 101 F.3d at 1476.

### 1. Paul's Disgorgement and Prejudgment Interest Calculation

As set forth in the declaration of Division of Enforcement Staff Accountant Jacquelyn D. King (hereinafter, "King Declaration," attached hereto as Exhibit 7), a reasonable approximation of Paul's net profits from the offering fraud is $1,169,804. *See* Ex. 7 ¶ 11.  Paul, though PEIA, raised $400,000 from the Summit Investors and charged $2,200 in fees.  Ex. 7 ¶¶ 7-8.  Quay raised $1,153,504 from the Aptus Investors (net of returns) for PEIA.  Ex. 7 ¶ 9.  As noted in the King Declaration, $385,900 of the Aptus Investors' funds is deducted from Paul's proposed disgorgement figure because this money transferred to Quay.  Ex. 7 ¶ 10.  Accordingly, $1,169,804 represents a reasonable approximation of the profits Paul realized from the offering fraud and should be disgorged.  Ex. 7 ¶ 11.

In fraudulent offering schemes, like the one perpetrated by Defendants, courts commonly recognize that the difference between total investor contributions and investor distributions is the proper means of estimating a defendant's ill-gotten gains. *See, e.g., SEC v. Graulich*, No. 09-cv-04355, 2013 WL 3146862, at *7 (D.N.J. June 19, 2013) (ordering defendant to "disgorge illegal profits" from their scheme "which is the amount of money raised by [defendants] through their fraud minus the amount received back by investors"); *SEC v. Watermark Fin. Servs. Grp., Inc.*, No. 08-cv-361S, 2012 WL 501450, at *8 (W.D.N.Y. Feb. 14, 2012) (finding total proceeds of securities sales, less amount repaid to investors, is a reasonable approximation of defendants' profits); *SEC v. Blackwell*, No. 11-cv-0234, 2012 WL 13564, at *3 (N.D. Tex. Jan. 4, 2012)

18

(quantifying disgorgement at proceeds less amount paid back to investors).

Joint and several liability is appropriate as to Paul and Quay for the $1,153,504 Quay raised from the Aptus Investors. *Liu v. SEC*, 140 S. Ct. 1936, 1949 (2020) (stating that joint-and-several liability may be imposed "for partners engaged in concerted wrongdoing."); *SEC v. Hughes Cap. Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) ("[J]oint-and-several liability is appropriate in securities cases when two or more individual or entities collaborate ... in engaging in the illegal conduct."). Prejudgment interest on the amounts subject to disgorgement is appropriate. Applying the IRS underpayment rate, the Commission accounting staff calculated prejudgment interest on the $169,804 from May 31, 2012, the first period after investor funds were last deposited into Defendants' bank accounts, to April 1, 2016, the last period after this action was filed. Ex. 7 ¶¶ 12-13. "[B]ecause defendants retained the benefit of these ill-gotten gains for several years, the award of prejudgment interest on those gains—calculated according to the IRS rate for the underpayment of taxes—is appropriate." *Chapman*, 2021 WL 199539, at *8. The resulting interest on Paul's disgorgement obligation is $142,013, for a total of $1,311,817. Ex. 7 ¶¶ 14-15.

In the Criminal Action, the Court ordered Paul to pay restitution in the amount of $1,511,931.[7] *See* Ex. 2 at 6. The funds that the Commission seeks to disgorge are a subset of the funds subject to the restitution order in the Criminal Action. Therefore, while there is independent justification to order disgorgement against Paul based on his violations of the federal securities laws, it is appropriate in this case to deem the order of disgorgement and prejudgment interest satisfied by the restitution order in the Criminal Action. *See, e.g., Chapman,* 2021 WL 199539, at *8 (deeming disgorgement and prejudgment interest satisfied by

---

[7] The criminal restitution likely differs from the proposed disgorgement because it includes losses dating back 10 years from filing of Criminal Case, and excludes advisory fees that PEIA charged to the Summit Investors.

19

the restitution order in the parallel criminal action); *SEC v. Catledge*, No. 12-cv-887, 2020 WL

3621311, at *3 (D. Nev. July 2, 2020) ("The court will deem this disgorgement satisfied in full

by the restitution ordered in the parallel criminal proceeding.").

### 2.    Quay's Disgorgement and Prejudgment Interest Calculation

A reasonable approximation of Quay's net profits from the securities fraud is $1,153,504.

*See* Ex. 7 ¶ 16.  The Commission accounting staff calculated this amount based on the

$1,153,504 net transfer from the Aptus Investors.  Ex. 7 ¶ 16.  Joint and several liability is

appropriate as to Quay and Paul because they were "partners engaged in concerted wrongdoing."

*Liu*, 140 S. Ct. at 1949; *see also Hughes Cap. Corp.*, 124 F.3d at 455.  Prejudgment interest

calculated on Quay's disgorgement obligation, compounded quarterly is $140,034, for a total of

$1,293,538.  Ex. 7 ¶¶ 17-19.  In the Criminal Action, the Court ordered Quay to pay restitution in

the amount of $1,253,239.  *See* Ex. 4 at 6.  It is appropriate in this case to deem $1,253,239 of

disgorgement and prejudgment interest satisfied by the restitution order entered in the Criminal

Action.  *See, e.g., Chapman*, 2021 WL 199539, at *8.  The final judgment, therefore, should

reflect a remaining balance of $40,299 owed by Quay.

### CONCLUSION

For the above reasons, the Commission respectfully requests that the Court enter a final

judgment against Defendants that (1) enjoins them from future violations of the federal securities

laws; (2) orders Paul to pay disgorgement of $1,169,804, of which $1,153,504 is joint and

several with Quay, together with prejudgment interest thereon of $142,013, for a total of

$1,311,817, which is deemed satisfied by the Court's order of restitution in the Criminal Action;

and (3) orders Quay to pay disgorgement of $1,153,504, jointly and severally with Paul, together

with prejudgment interest of $140,034, for a total of $1,293,538, of which $1,253,239 is offset

by the Court's order of restitution in that same amount in the Criminal Action, for a remaining balance due on the judgment of $40,299.

A proposed Order has been filed along with this Memorandum.


Dated:  July 21, 2022                              Respectfully submitted,

                                                  /s/ *Karen N. Klotz*
                                                  Karen M. Klotz (PA 88171)
                                                  Spencer Willig
                                                  U.S. Securities and Exchange Commission
                                                  Philadelphia Regional Office
                                                  1617 JFK Boulevard, Suite 520
                                                  Philadelphia, PA 19103
                                                  Phone: (215) 597-3100
                                                  Fax: (215) 597-2740

                                                  *Counsel for Plaintiff*
                                                  *U.S. Securities and Exchange Commission*